# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00639-KDB-DCK

**CHRISTOPHER P. SMITH,**

Plaintiff,

v.

**JOSEPH POLLINO, ET AL, ,**

Defendant.

<u>**ORDER**</u>

It is often said that all politics is local. This case presents the question of whether local politics, specifically an intensely local political dispute, is cause for a federal lawsuit. Plaintiff Christopher Smith was a mayoral candidate in the November 2019 general election for the Village of Marvin, North Carolina (the "Village" or "Marvin"). He alleges that Defendants – who are the Village, the Village's Mayor Joseph Pollino and other Marvin politicians – violated federal and state law by their conduct in response to Smith's decision to support a write in candidate for the Village Council who the individual Defendants opposed.

If true, Smith's allegations show that Pollino and the other individual Defendants acted unprofessionally, profanely and perhaps in violation of state law. However, the critical threshold issue before this Court on Defendants' motions to dismiss the Amended Complaint, (Doc. Nos. 37, 39 and 41), is whether Smith has plausibly alleged a violation of 42 U.S.C. § 1983, the only basis on which this Court could exercise subject matter jurisdiction over the parties' dispute. After considering these motions and the parties' extensive written arguments, the Court finds that Smith has not sufficiently pled a claim under Section 1983 and, accordingly, will **GRANT** the motions to dismiss Plaintiff's lone federal claim. Also, the Court will dismiss Smith's supplemental state

1

claims without prejudice so that those claims may be refiled in state court if Smith chooses to do so.[1]

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction,

---

[1] The Court expresses no opinion on the merits of Plaintiff's state claims nor whether those claims should be refiled in state court.

constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc*., 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Plaintiff alleges that the Court has subject matter jurisdiction based on Federal question jurisdiction, 28 U.S.C. § 1331. Federal question jurisdiction arises only from "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal*., 463 U.S. 1, 27–28 (1983). In this action, only one of Plaintiff's claims purports to set forth a federal question – the claim under 42 U.S.C. § 1983. If the Court finds that Plaintiff's federal claim cannot proceed then the court may decline to exercise supplemental jurisdiction over his remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff was a mayoral candidate in the Village's November 2019 general election (the "Election"). (Amended Complaint, Doc. No. 34, at ¶ 63). The Defendants are the Village; Marvin's mayor Pollino; Michael Lavelle and Jon Jones, members of the Village Planning Board; and Robert Marcolese and Jamie Lein, who were the two successful Village Council candidates in the Election.

Smith decided to run for mayor in late 2018 and met with Pollino to discuss his decision and to solicit Pollino's feedback. (*Id*. at ¶¶ 63, 65). In that meeting, Pollino told Smith that he would not seek re-election. (*Id*. at ¶ 66). There were three positions with Village government on the ballot in the Election: mayor, and two open seats on Village Council. (*Id*. at ¶ 64). For most of the year leading to the November 2019 general election, Marcolese and Lein were the only two candidates for the open Council seats and Smith met with them on several occasions. (*Id*. at ¶ 71).

Part of Smith's discussions with Marcolese and Lein involved their complaints against now former Village Councilmember Mary Shkut, who at that time was a controversial member of the Village council. (*Id*. at ¶ 72). In May 2018, Shkut had been appointed, in a split vote, to fill the seat and term of a departing Councilmember. (*Id*. at ¶¶ 25-28). The vote occurred during the absence of another Councilmember who would have voted against her, which would have led to denying her the appointment. (*Id*.) Shkut's appointment under these circumstances led Pollino and the members of the Council who opposed her to refuse to recognize her appointment and pursue a lengthy effort to denounce the appointment in the Council and later to file litigation to invalidate the appointment. (*Id*. at ¶¶ 32-58). Smith characterizes these legislative and legal challenges to the validity of Shkut's appointment as the Village's "disapproval of Mary Shkut." (Id. at, e.g., ¶¶ 38, 47, 50).

Following his meetings with Marcolese and Lein, Smith decided to meet with Shkut. (*Id*. at ¶ 82). Despite Marcolese and Lein's negative view of Shkut and all the drama attendant to her appointment, Smith came to believe that Shkut was an asset to the Village Council, and Smith encouraged Shkut to consider a write-in campaign to retain her seat. (*Id*. at ¶ 84). In late October 2019, Shkut registered a notice of candidacy with the Union County Board of Elections.

4

(*Id.* at ¶ 86). After Shkut entered the council race, Smith gave Shkut a letter of endorsement and authorized Shkut to publish the letter to Shkut's campaign website. (*Id.* at ¶ 87).

The political backlash against Smith from the Village politicians who opposed Shkut was swift and passionate. The Sunday after Shkut published Smith's endorsement (only two days before the Tuesday election), Plaintiff received three phone calls. The first two calls were from Kimberly Vandenberg, a Village Councilmember, and her husband Mike Vandenberg. (*Id.* at ¶¶ 88-91). Both Vandenbergs, allegedly using foul and explicit language, criticized Smith's endorsement of Shkut and urged him to withdraw his support of her. (*Id.* at ¶¶ 88-91). Then, Smith received a call from Pollino who demanded that Plaintiff rescind his support for Shkut and said that if he didn't do so then Pollino would conduct a write in campaign against Smith for Mayor. (*Id.* at ¶¶ 94-95). Also, during the call, Pollino allegedly told Smith that he had learned that, if Shkut were elected, several Village employees would quit their jobs; that his decision to support Shkut put careers, livelihoods, and families at stake; and, finally, that if Smith did not rescind his support for Shkut, Pollino would fabricate and disseminate a story to residents in the Village that Smith had engaged in an extra-marital affair. (*Id.* at ¶¶ 96-99). Smith alleges that he was shocked and intimidated by the call. (*Id.* at ¶ 101).

The next day, the Monday before the election, Smith began seeing signs encouraging voters to vote for Pollino as a write-in candidate for mayor. (*Id.* at ¶ 104). Smith also received a text message from Defendant Lavelle, with whom Smith served as volunteer members of the Village Planning Board. (*Id.* at ¶ 106). In the text, Lavelle wrote that he "was extremely shocked and disappointed that [Plaintiff] chose to endorse [Mary Shkut]" and asked if Plaintiff would be at the Planning Board meeting so that they "could talk after." Plaintiff replied that he would be at the meeting and that "[he]'d like to catch up afterwards as well." (*Id.*)

Smith alleges that Leavelle's text was part of a "coordinated plan" to " confront" Smith. (*Id*. at ¶ 114). After the planning meeting, Smith and Pollino, Lavelle, Lein, and Marcolese walked outside to a parking lot. (*Id*. at ¶¶ 115-116). Smith alleges that the four men closely surrounded and began screaming at him. (*Id*. at ¶¶ 117, 119-120). Lein shouted that Smith was a liar, a "piece of shit," and a man without morals. Marcolese shouted that Smith had betrayed him and Lein. Pollino also shouted epithets at Smith. Smith alleges that at one point he attempted to leave, but Lein stopped him, pointed his finger at him and began ranting frantically about Lein's recently deceased wife. Smith claims that this encounter left him extremely afraid. (*Id*. at ¶ 121). Lein and Marcolese ultimately walked away, but after Smith returned to his car Pollino and Lavelle approached Smith to again tell him that he should withdraw his candidacy and renounce his support for Shkut. (*Id*. at ¶¶ 122-25).

At 8:30 AM the next morning, election day, Smith drove to Marvin Elementary, a polling location, to greet voters. (*Id*. at ¶ 136). When he arrived, he noticed Lein and Pollino in the parking lot and allegedly became sick because of the events of the previous evening. (*Id*. at ¶ 138). Smith then went home for a short time but came back to the polling site around 10:00 AM. (*Id*. at ¶¶ 138-140). Upon Smith's return, his run-ins with Defendants continued as he campaigned on Election Day. Lavelle, at the polls to support Pollino, Lein, and Marcolese, allegedly interfered with Smith as Smith attempted to greet voters, including by stepping between Smith and voters as they approached. (*Id*. at ¶ 141). Plaintiff further claims that a campaign handout that Smith created had been modified either by or at the urging of Defendants to include a stapled-on flyer that bashed Shkut's candidacy. (*Id*. at ¶¶ 142-45). Finally, Plaintiff alleges that as he stood in the school parking waiting to greet voters, Defendant Jones, the Chair of the Village Planning Board and a supporter of Pollino, Marcolese, and Lein, drove his truck

6

in Plaintiff's direction at an inappropriate speed for a parking lot, allegedly forcing Plaintiff to move for fear of being struck by the vehicle. (*Id.* at ¶ 148).

Smith lost the mayoral election to Pollino by 18 votes out of 1275 cast. (*Id.* at ¶ 154). Soon after the Election, Smith filed this action asserting the following claims: (1) Under 42 U.S.C. § 1983 alleging violation of the First and Fourteenth Amendments against all Defendants (*Id.* at ¶¶ 155-177); (2) North Carolina Constitutional claim alleging the violation of the right to free speech against all Defendants (*Id.* at ¶¶ 178-182); (3) North Carolina Constitutional claim alleging the violation of the right to free and open elections against all Defendants (*Id.* at ¶¶ 183-191); (4) False imprisonment against all Defendants (*Id.* at ¶¶ 192-196); (5) Assault against Defendant Jones (*Id.* at ¶¶ 197-200); and (6) Assault against Defendants Pollino, Lavelle, Marcolese, Lein, and the Village (*Id.* at ¶¶ 201-205).

In response to the Complaint, Defendants filed motions to dismiss. Thereafter, Smith filed his Amended Complaint, which in turn led to the Defendants' motions to dismiss now before the Court.

### III.  DISCUSSION

#### A.  Plaintiff's Claim under Section 1983

Plaintiff's only claim under federal law is his First Claim for Relief, which alleges that each of the Defendants violated 42 U.S.C. § 1983. As noted, if that claim fails then the Court does not have original subject matter jurisdiction over any of Plaintiff's supplemental state court claims. Accordingly, the threshold question for the Court is whether Smith has adequately stated a claim under Section 1983. That statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

7

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

Thus, a case filed under 42 USC §1983 provides potential remedial relief for a plaintiff who can prove that a person acting under color of state law deprived him of a right secured by federal law, including violations of federal constitutional rights, as well as certain limited federal statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *see also Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). Here, Plaintiff alleges that the Village; Pollino, Lavelle, and Jones (in both their official and individual capacities) and Marcolese and Lein (as individuals) violated Section 1983 by acting under color of an official policy or custom of the Village to deprive Smith of his rights to political speech under the First Amendment to the U.S. Constitution, as incorporated against the States through the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

### 1. Claims Against the Village and Pollino, Lavelle and Jones in their "Official Capacity"

Turning first to Plaintiff's claims against the Village and Pollino, Lavelle, and Jones in their official capacities, a municipality is considered a "person" and thus is subject to suit. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538 (4th Cir. 2018). However, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, an official capacity claim is a claim against the

8

Case 3:19-cv-00639-KDB-DCK   Document 52   Filed 05/01/20   Page 8 of 17

governmental entity employing the official. *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (internal citations omitted).

The consequence of the fact that "official capacity" claims against government officials "are essentially the same as a claim against the entity," is that courts often hold they "should be dismissed as duplicative when the entity is also named as a defendant." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004); *see also Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) ("duplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed"). Therefore, because Smith has asserted what is commonly referred to as a *Monell* claim directly against the Village, the Court will dismiss the claims against Pollino, Lavelle, and Jones in their official capacity.

Under *Monell*, there are four theories that can be potentially pursued under Section 1983 to show an unlawful custom, policy, or practice:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)). Beyond identifying a policy or practice that may be attributable to the governmental unit, the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original). In other words, a plaintiff must show that the action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the action and the deprivation of federal rights. *Id*. Indeed, "[t]he first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct

9

causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Thus, the Supreme Court has made clear that a Plaintiff seeking to impose *Monell* liability bears a heavy burden: "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997) (citation omitted). The Fourth Circuit has similarly held that "[t]he substantive requirements for proof of municipal liability are stringent." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Plaintiff primarily pursues his claims against the Village under the first *Monell* theory; specifically, he alleges that there was an "official policy and custom of the Village of Marvin to disapprove of Mary Shkut and to take action to prevent Shkut and her supporters from participating in Village government." Doc. No. 34 at ¶ 153. However, while Plaintiff alleges that the Village enacted an "official policy" under which his right to free speech was violated, the Amended Complaint does not plead *facts* that establish such a policy and in particular a policy that made the constitutional violations a "reasonable probability rather than a mere possibility." *See Spell v McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987); *Semple v City of Moundsville*, 95 F.2d 708, 713 (4th Cir 1999).

While Plaintiff characterizes the Village's "policy" as one of "disapproval" of Mary Shkut, the actual facts alleged reveal instead that the Village's "policy" was simply that Ms. Shkut's appointment to the Village Council was invalid. *See* Amended Complaint, Doc. No. 34, at ¶¶ 34-35, 43, 45, 53, 58. To be sure, the Mayor and the councilmembers who supported this view may

have taken it because they did not like Ms. Shkut and/or her political positions, but the supposed *motivations* of the legislators who vote for a particular statute or "policy" are not the policy itself. Therefore, to the extent a "policy" even existed,[2] it did not, taking the facts alleged as true, reflect "disapproval" of Ms. Shkut, as characterized by Plaintiff. Further, even if the "policy" could plausibly be inferred to reflect "disapproval" (which the Court finds it could not), the Village's alleged actions certainly do not establish any "policy or custom" to prevent Shkut's *supporters* from participating in Village government.[3] Indeed, nothing in any of the alleged facts related to the Village's actions with respect to Ms. Shkut refers in any way to her supporters nor can such an official policy be inferred from the Village's actions.

In summary, the Court finds that the Amended Complaint does not make Plaintiff's Section 1983 claim against the Village one that "has facial plausibility" because the plaintiff has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As has been long established, there is no *respondeat superior* liability under Section 1983. Therefore, in the absence of facts to support the adoption of an actual Village policy preventing Ms. Shkut's supporters like Smith from

---

[2] Plaintiff's description of the Village's actions with respect to the validity of Ms. Shkut's appointment to the council as a "policy" would potentially make any state or local elected board's action against any elected official a "policy" of "disapproval" under *Monell*. This appears to be well beyond what *Monell* contemplates. Under *Monell*, "[a]n official policy often refers to 'formal rules or understandings ...that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999).

[3] Although the court must accept factual allegations in the complaint as true and consider the facts in the light most favorable to the plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Market Incorporated v. J.V. Associates, LP*, 213 F.3d 175, 180 (4th Cir. 2000).

participating in Village government,[4] the allegations of the Amended Complaint simply do not "move" the plaintiff's claims under 42 U.S.C. § 1983 "from possible to plausible" with respect to the Village. *See Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's Section 1983 claim against the Village will be dismissed.

## 2. Claims Against the Defendants as Individuals

In addition to his claims against Pollino, Leavelle and Jones in their official capacity, Plaintiff has asserted a Section 1983 claim against each of them as individuals. Also, Plaintiff asserts an individual Section 1983 claim against Marcolese and Lein on the alleged grounds that they were "acting in concert" and "coordinated" with the other individual Defendants to thwart Plaintiff's mayoral candidacy and otherwise abridge his political speech.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (holding that Section 1983's requirement that a defendant act under "color of law" is treated as the equivalent to the "state action" requirement under the Fourteenth Amendment); *Haavistola v. Community Fire Co.*, 6 F.3d 211, 215 (4th Cir. 1993) (same).

---

[4] This holding equally applies to Plaintiff's conclusory, one sentence "alternative" allegation that the Village's actions were "perpetuated and coordinated" by an *unidentified* "final policymaker of the Village." *See* Amended Complaint, Doc. No. 34, at ¶ 176. Regardless of who "perpetuated" the "policy," the absence of factual support for the existence of a policy against Ms. Shkut's supporters dooms the Section 1983 claim against the Village. If there is no such policy, then this alternative allegation simply reflects an improper effort to impose vicarious liability on the Village for the actions of one of its officials. *See Spell* 824 F.2d at 1388.

The state action requirement "reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). "This fundamental limitation on the scope of constitutional guarantees 'preserves an area of individual freedom by limiting the reach of federal law' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (quoting *Lugar*, 457 U.S. at 936-37); *see also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Therefore, the first requirement to obtain relief under 42 U.S.C. § 1983 is that a Plaintiff must show that a defendant acted under state authority in depriving him of a constitutional or federal right. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

In assessing whether "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State," courts examine the "totality of the circumstances," *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006) (internal citations omitted), to determine if the action at issue "bore a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 525 (4th Cir. 2003) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Plaintiff claims that the moving Defendants were acting under color of "a statute, ordinance, regulation, custom, or usage" because "[i]t was through and as a direct result of said Defendants' official powers and duties that they were able to coordinate and execute the ambush of Plaintiff at Village Hall." *See* Amended Complaint, Doc. No. 34, at ¶¶ 171-172. However, as with the conclusory and factually unsupported allegation of a policy to prevent supporters of Ms. Shkut from participating in Village government, the Amended Complaint fails

to provide factual support for how Defendants used their "official powers and duties" to deprive Plaintiff of his rights.

Significantly, the Amended Complaint does not identify with any specificity the "official powers and duties" the Defendants used against Smith. Smith alleges that Defendants harassed him on the phone, confronted him in person in a parking lot, interfered with his campaigning at a polling site and drove a car towards him. However wrongful (or not) those actions may be, none of Defendants' alleged improper conduct depended or relied on their official powers or duties in any way. Rather, they simply used texts, a phone and a car to accomplish their alleged plan. Indeed, it appears that any group of five people who opposed Smith's candidacy, whether or not they were politicians in Marvin, could have easily done the same thing. *See Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("[S]ection 1983 is ... implicated ... [when] the conduct is such that the actor could not have behaved in that way but for the authority of his office."); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000) (holding that challenged conduct is more likely to amount to state action when "the injury caused is aggravated in a unique way by the incidents of governmental authority" (internal quotation marks omitted); *see also Rossignol,* 316 F.3d at 526 (only when a defendant's "status" as a public official "enabled them to execute their scheme in a manner that private citizens never could have," then the action is more likely to be treated as attributable to the state.)

As to Defendants Marcolese and Lein, the allegations tying them to any action "under color of law" is even more attenuated. Individual capacity liability under Section 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). As the Supreme Court stated, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff ... must plead that each Government-official

14

defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citation omitted). Therefore, in order to establish liability under Section 1983, the plaintiff must affirmatively show that the individual defendants "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)(internal citations omitted); *accord Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997) ("liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."); *Garraghty v. Commonwealth of Virginia, Department of Corrections*, 52 F.3d 1274, 1280 (4th Cir. 1995).

Plaintiff's allegations against Marcolese and Lein with respect to their liability under Section 1983 begin and end with the summary allegations that they were part of a "coordinated" effort and "acted in concert" with the other defendants. These conclusory and non-specific allegations are insufficient to plausibly conclude that they have engaged in conduct that can be analogized to "state action." The Amended Complaint is silent as to their specific roles in any unlawful "coordination" and, in any event, if the other Defendants did not "use their official powers and duties" against Smith then Marcolese and Lein's "coordination" with them is legally no different than any group of five people getting together to pursue a shared political agenda. Therefore, the Court finds that the Amended Complaint fails to plausibly allege facts sufficient to support the requirement that Defendants acted "under color of law" under Section 1983 and will dismiss Plaintiff's Section 1983 claims against the individual Defendants as individuals.[5]

---

[5] The Court need not reach and does not decide Defendants' other arguments in support of their motion to dismiss Plaintiff's Section 1983 claim. However, the Court notes that much of the conduct alleged by Plaintiff implicates Defendants' First Amendment rights to political speech as well as Plaintiff's. *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) (there is "practically universal agreement that a major purpose of the [First] Amendment [is] to protect the free discussion of governmental affairs . . . includ[ing] discussion of candidates."). While Plaintiff alleges that

15

Case 3:19-cv-00639-KDB-DCK   Document 52   Filed 05/01/20   Page 15 of 17

### B. Plaintiff's State Law Claims

The real gravamen and substance of Plaintiff's claims against the Defendants lies in his claims under the North Carolina constitution and state tort claims for false imprisonment and assault. However, with the dismissal of Plaintiff's Section 1983 claim, which is his only federal claim in this action grounded in federal question jurisdiction under 28 U.S.C. § 1331, the Court no longer has a basis for supplemental subject matter jurisdiction over those claims. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

Defendants' speech / conduct was ill-mannered (to put it charitably) and may in some respects exceed the bounds of protected speech depending on the merit of Plaintiff's state law claims, Defendants had the same rights as Plaintiff to express their views on the candidates seeking office in the Election and more specifically had the right to criticize Plaintiff for his support of Mary Shkut and tell Plaintiff in clear terms why they decided to oppose his candidacy. *See New York Times Co. v. Sullivan*, 376 US 254, 270 (1964) (debate on public issues should be "uninhibited, robust, and wide-open" and "may well include vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials").

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 37, 39, 41) are **GRANTED with prejudice** as to Plaintiff's First Claim for Relief – 42 U.S.C. § 1983 and **GRANTED without prejudice** as to all of the Plaintiff's remaining claims for relief;

2. Defendants' requests for attorneys' fees pursuant to 42 U.S.C. § 1988 are denied in the exercise of the Court's discretion; and

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 1, 2020

Kenneth D. Bell
United States District Judge